326 So.2d 715

**Earley C. MACON et al.**

v.

**ALABAMA MINERAL LAND COMPANY.**

**SC 1245.**

Supreme Court of Alabama.

Jan. 22, 1976.

Rehearing Denied Feb. 27, 1976.

Hogan, Smith & Alspaugh, Birmingham, for appellants.

Wallace, Ellis, Head & Fowler, Harrison & Conwill, Columbiana, for appellee.

SHORES, Justice.

Mrs. Leola Brasher and her son, Clarence Brasher, filed a bill to quiet title to 40 acres of land in Shelby County, Alabama, and also sought to have a deed, executed by the Brashers in 1968 conveying 35 acres of the same property to Alabama Mineral Company, set aside on grounds that it was procured by fraud, or that there was no consideration for the same.

The complaint alleges that the Brashers have claimed title to the property by adverse possession since 1935.

The complaint was filed in March, 1973. The Macons, who had acquired the interest in the property claimed by the Brashers in June, 1972, were permitted to intervene after the court discovered that they claimed such interest. The interest claimed by Alabama Mineral Land Company was acquired by R. Hugh Daniel, Jr. and Charles W. Daniel in August of 1972. They, too, became intervenors.

After hearing the evidence, the trial judge entered a decree finding the 1968 deed valid and that title to the 35 acres was in the Daniels. From this judgment the Macons appealed.

Record title to the property has been in Alabama Mineral Land Company and its predecessors in title for many decades. Alabama Mineral Land Company has paid taxes on the property for many years. The Brashers have lived on the property since 1935; and, in 1951, assessed the property in their names and paid back taxes on the property for the years 1947 to 1951, and continued to pay the taxes through 1971.

It was the contention of Alabama Mineral Land Company, which owned several thousand acres of land, of which this 40 acres was a part, that Mr. and Mrs. Brasher had lived on the property with the permission of the owner. In 1968, Mr. and Mrs. Brasher executed a deed to Alabama Mineral Land Company for 35 of these acres; and the company executed a deed to them conveying five acres off of one side of the 40-acre tract on which the Brashers had built a house many years before.

If the evidence supports the trial court's finding that the deed from the Brashers to Alabama Mineral Land Company of the 35 acres was valid, there is no necessity to treat the question of whether the Brashers had acquired title to the property by adverse possession.

Mr. Karl Harrison, an attorney who represented Alabama Mineral Land Company at the time of the exchange of deeds between Alabama Mineral Land Company and the Brashers, testified that an agent and employee of the company explained to him that there had been some problem with the Brashers which came to light when the company discovered that the Brashers had been paying taxes on the property. This agent worked out an agreement with the Brashers whereby it was agreed that the Brashers would convey 35 acres of the 40 to Alabama Land Mineral Company in exchange for a refund of the taxes they had paid on the 40 acres; and further, in exchange for a warranty deed conveying to them five acres of the land upon which their house was situated. Mr. Harrison prepared the deeds and went with Alabama Mineral's agent to the Brashers and explained what the documents were. The deed to them conveying the five acres was delivered by Mr. Harrison. The Brashers executed the deed to Alabama Mineral Land Company and were given a check drawn by Alabama Mineral to them reimbursing the amount of taxes paid by the Brashers.

The Macons, successors in title to the interest claimed by the Brashers, contend that the deed conveying the 35 acres signed by the Brashers was not based upon consideration and was procured by fraud. Mrs. Brasher testified that she did not remember signing the deed. Neither she nor Mr. Brasher could write, and the deed was executed by them by mark. Mr. Harrison testified that it was signed in his presence after he explained to them what the deed was and what the entire transaction meant. His testimony was that both of them knew what was involved, they appeared to be in good health, and appeared to understand and agreed to this transaction. It was his testimony that he told Mr. and Mrs. Brasher that they did not have a deed to the land; that it was Alabama Mineral's contention that they were occupying the land permissively, but that Alabama Mineral was willing to reimburse the taxes they had paid (some $120.00) and, in addition, convey to them five acres of the land upon which their house was situated.

Although Mrs. Brasher testified that she had no recollection of signing the deed and did not identify her mark, her daughter-in-law testified that she learned from Mrs. Brasher that the transaction had taken place. Mr. Brasher was dead when the hearing was had and, hence, was unable to testify.

Mr. Oden, Chairman of the Board of Alabama Land Mineral Company, testified that Mr. Brasher had worked for a predecessor corporation which had owned the land in question before it was acquired by his company; that his father and another man owned this land through this corporation; and that Mr. Brasher had worked for that corporation. During the depression, he had no place to live and was given permission to build the house on the land. There was testimony that, when the company was cutting logs in the area, they left enough logs for Mr. Brasher to build his house. He, his wife and son lived on the property from 1935 until shortly before

this suit was filed. When it was discovered that the Brashers had been paying taxes on it, the company worked out an agreement with the Brashers to repay them the taxes they had paid and, in addition, deed them 5 acres. The Brashers agreed to this arrangement and signed the deed to the company conveying the 35 acres and were given a warranty deed by the company to the five acres. The taxes were reimbursed and the Brashers cashed the check.

Mrs. Brasher, on one of the hearings in this case, testified that she and her husband were given permission to build their house on this property; but, at a different hearing, she testified that she did not remember signing any deed to the 35 acres. She testified that she remembered Mr. Harrison and an agent of Alabama Mineral coming to their house and talking about the Brashers making a deed to the company to 35 acres, and the company would make a deed to them of five acres. She remembered that her husband was told that the company would reimburse them for the taxes they had paid on the property. She remembered that the company did repay them for the taxes. She also remembered that Mr. Harrison and the agent of the company came to their house and had a deed for them to sign. She said that her husband handled the transaction, but she remembered it. She testified that she did not remember whether or not she signed the deed.

Mrs. Brasher did say that her husband told her that if they ever decided to sell the 5 acres that they should give Mr. Oden the first chance to buy it, because he had been so nice to them. She also said that when she decided to sell it after her husband's death that she did call Mr. Oden and offer him the first chance to buy the 5 acres.

It was uncontradicted that the deed from Alabama Mineral to the Brashers conveying the 5 acres was delivered simultaneously with the deed from them conveying to Alabama Mineral the 35 acres. No claim is made that the deed from Alabama Mineral is defective for failure of consideration. Yet, all it got in exchange for the deed was the exchange deed from the Brashers.

As we read the evidence in this case, we are in agreement with the trial court that the Brashers and Macons have failed in their burden to prove that the deed conveying 35 acres to Alabama Mineral Land Company was procured by fraud or was not based upon consideration. Nor do we find any evidence to support the charge that Mr. and Mrs. Brasher were not aware of what they were doing when they signed the deed.

There is abundant evidence to support the trial court's finding that the deed was valid and that the Macons failed to prove that it was procured by fraud. Ordinarily, fraud is never presumed and the burden is on the party asserting fraud to prove it. *Morrison v. Federal Land Bank of New Orleans*, 232 Ala. 138, 167 So. 288 (1936). It is also well-settled that fraud will not be implied when the circumstances from which it is supposed to arise may reasonably be consistent with honest intention. *McNulty v. Higginbotham*, 252 Ala. 218, 40 So.2d 414 (1949).

In the instant case, there is evidence from which the trial court could have concluded that the transaction between the Brashers and Alabama Mineral was not tainted by fraud. In fact, after reading the record, we are struck with the dearth of evidence to the contrary. We agree with the result reached by the trial judge on this issue; and there being sufficient evidence to support his finding, it will not be disturbed here. See cases collated at 2A Ala.Dig., Appeal and Error, ☞1008.-1(6).

Since we are in agreement with the trial court that the evidence fails to support the claim made by appellants that the deed should be set aside, we see nothing to be

gained by going into all of the evidence on the claim of title by adverse possession. Even if the evidence support the appellants' claim that the Brashers had acquired title to this property by adverse possession, and we do not concede that it does, rather there was abundant evidence to indicate that their possession was permissive the entire period, the fact that they deeded their interest in the property to Alabama Mineral in 1968 by a valid deed vitiates any necessity to prolong this opinion by going into the evidence pro and con on the issue of adverse possession.

Finding the judgment of the trial court fully supported by the evidence, the same is affirmed.

Affirmed.

HEFLIN, C. J., and MERRILL, MADDOX and JONES, JJ., concur.